UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-80161-CR-RSYKAMP/HOPKINS

UNITED STATES OF AMERICA

vs.

MICHAEL BRYANT,

     Defendant.
_____/

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and Michael Bryant (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to the information, which charges the defendant with distributing a controlled substance analogue, in violation of Title 21, United States Code, Sections 841(a)(1) and 813.

2. The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing

Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

3. The defendant also understands and acknowledges that the Court may impose a statutory maximum term of imprisonment of up to 20 years, followed by a term of supervised release of at least 3 years. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $1,000,000.

4. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $100 will be imposed on the defendant. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing. If a defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

5. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations

2

contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

6. The United States agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, the government will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. The United States, however, will not be required to make this motion and this recommendation if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

7. The defendant agrees that he shall cooperate fully with this Office by: (a) providing truthful and complete information and testimony, and producing documents, records and other evidence, when called upon by this Office, whether in interviews, before a grand jury, or at any trial or other Court proceeding; (b) appearing at such grand jury proceedings, hearings, trials, and other

3

judicial proceedings, and at meetings, as may be required by this Office; and (c) if requested by this Office, working in an undercover role under the supervision of, and in compliance with, law enforcement officers and agents. In addition, the defendant agrees that he will not protect any person or entity through false information or omission, that he will not falsely implicate any person or entity, and that he that he will not commit any further crimes.

8. This Office reserves the right to evaluate the nature and extent of the defendant's cooperation and to make that cooperation, or lack thereof, known to the Court at the time of sentencing. If in the sole and unreviewable judgment of this Office the defendant's cooperation is of such quality and significance to the investigation or prosecution of other criminal matters as to warrant the Court's downward departure from the advisory sentencing range calculated under the Sentencing Guidelines and/or any applicable minimum mandatory sentence, this Office may make a motion prior to sentencing pursuant to Section 5K1.1 of the Sentencing Guidelines and/or Title 18, United States Code, Section 3553(e), or subsequent to sentencing pursuant to Rule 35 of the Federal Rules of Criminal Procedure, informing the Court that the defendant has provided substantial assistance and recommending that the defendant's sentence be reduced. The defendant understands and agrees, however, that nothing in this agreement requires this Office to file any such motions, and that this Office's assessment of the quality and significance of the defendant's cooperation shall be binding as it relates to the appropriateness of this Office's filing or non-filing of a motion to reduce sentence.

9. The defendant understands and acknowledges that the Court is under no obligation to grant a motion for reduction of sentence filed by the government. In addition, the defendant

further understands and acknowledges that the Court is under no obligation of any type to reduce the defendant's sentence because of the defendant's cooperation.

10. The parties agree to recommend to the Court that the following guideline provisions are applicable: That pursuant to the drug quantity table contained in Section 2D1.1, the base offense level is 16. Assuming that the defendant receives the three level adjustment for acceptance of responsibility, his offense level would be 13.

11. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the Court. The defendant understands further that any recommendation that the government makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 2 above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

12. The defendant agrees to forfeit to the United States voluntarily and immediately all of his right, title and interest in a motor vehicle, described as a 2003 Chevrolet Silverado, C1500 HD, truck, pursuant to Title 21, United States Code, Section 881, which is being forfeited administratively by the Drug Enforcement Administration. The defendant agrees to assist the Drug Enforcement Administration in any manner necessary, such as completing any paperwork required, to effect the transfer/forfeiture of said vehicle.

13. The defendant is aware that Title 18, United States Code, Section 3742 and Title 28, United States Code, Section 1291 afford the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Sections 3742 and 1291 to appeal any sentence imposed, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b) and Title 28, United States Code, Section 1291. However, if the United States appeals the defendant's sentence pursuant to Sections 3742(b) and 1291, the defendant shall be released from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that the defendant has discussed the appeal waiver set forth in this agreement with the defendant's attorney. The defendant further agrees, together with the United States, to request that the Court enter a specific finding that the defendant's waiver of the defendant's right to appeal the sentence to be imposed in this case was knowing and voluntary.

14. This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 12/7/12         By: _____
                      ROGER H. STEFIN
                      ASSISTANT UNITED STATES ATTORNEY

Date: 12/7/12         _____
                      PETER BIRCH
                      ATTORNEY FOR DEFENDANT

Date: 12/7/12         _____
                      MICHAEL BRYANT
                      DEFENDANT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-80161-CR-RYSKAMP/HOPKINS

UNITED STATES OF AMERICA    )
                            )
v.                          )
                            )
MICHAEL BRYANT,             )
                            )
        Defendant.          )
_____)

## FACTUAL PROFFER

The United States of America and the defendant, MICHAEL BRYANT, submit this factual proffer in support of the proposed plea agreement in this matter and stipulate that if this case were to go to trial, the government would establish a prima facie case of guilt to the offense contained in the Information, based upon the following undisputed facts:

1. Synthetic cannabinoids refers to chemical substances which mimic the physical and psychological effects of marijuana and are intended to be ingested in the human body, mainly through smoking. Synthetic cannabinoid products are manufactured and packaged in clandestine labs throughout the United States and elsewhere and are frequently sold via the internet, and through "legitimate" establishments, such as convenience stores, gas stations, smoke shops, head shops and other retail outlets. The substances have been packaged and sold under various name brands. The packaging often refers to the product as "incense" or "potpourri," and bears false labeling, stating that it is "not for human consumption." In fact, as the manufacturers, distributors and end users of these products are well aware, the product has no other purpose than human consumption.

1

2. In January 2012, agents from the West Palm Beach Resident Office of the DEA initiated an investigation into the activities of an individual (Subject #1) who was believed to be a distributor of synthetic cannabinoids in South Florida. As a result of the investigation, on March 30, 2012, agents executed a federal search warrant on a business belonging to Subject #1 and seized thousands of packages of synthetic cannabinoid products, among other things. A large majority of the synthetic cannabinoid products seized from Subject #1's business was packaged and sold under the brand name "Mr. Nice Guy".

3. Subject #1 identified several individuals with whom he had been dealing to obtain the Mr. Nice Guy products, and later that day subject #1 arranged with the sellers to receive a controlled delivery of additional "Mr. Nice Guy" products. The delivery of the products took place in a parking lot in Boca Raton, Florida. The defendant, Michael BRYANT was the person making the delivery. The amount of product delivered that afternoon was less than 20 kilograms. The defendant was identified as having made other deliveries to Subject #1 (the quantity of which is undetermined at this time).

4. A representative sample of product seized as a result of the delivery by BRYANT on March 30, 2012 was submitted to a DEA lab and found to include the following chemicals: 1 Pentyl-3-(2,2,3,3-tetramethycyclopropoyl)indole), commonly known as UR-144; and 1-(5-fluoropentyl)-3-(2,2,3,3-tetramethylcyclopropoyl)indole), commonly known as 5-fluoro-UR-144. Chemists employed by DEA have opined that UR-144 and 5-fluoro-UR-144 constitute analogues of JWH-018 [1-pentyl-3-(1-naphthoyl) indole], a synthetic cannabinoid which has been listed as a Schedule I controlled substance since March 2011.

5. The evidence would additionally show that the "Mr. Nice Guy" products were manufactured by individuals who operated under a number of company names, including

2

Kratom Labs, located in Palm Beach County, Florida. Witnesses would identify BRYANT as one of the employees of Kratom Lab. Employees of Kratom Lab were aware that the product being manufactured was for human consumption, despite the labeling on the packaging which falsely stated otherwise. Employees were also generally aware that the products, when ingested, had the same or similar physiological effect on the human body as other synthetic cannabinoids.

6. The evidence would show that chemicals used by Kratom Labs to manufacture the Mr. Nice Guy products were being imported from China. According to DEA chemists, these chemicals have similar chemical structures to that of substances that have been listed as banned controlled substances, notably JWH-018. Additionally, the substances have the same or similar physiological effect on the human body when ingested as that of JWH-018. The evidence would also show that the "Mr. Nice Guy" product consists of marshmallow leaf, acetone, and the chemical analogue. According to witnesses, the marshmallow leaf would be placed into an industrial sized cement mixer, and would then be sprayed with the powder analogue that has been diluted in acetone. Due to the strong odor and toxic fumes from the acetone and the analogue, Kratom Labs' employees would wear protective gear during the mixing process.

7. On May 21, 2012, the West Palm Beach Fire Department and Police Department, along with agents from the DEA, responded to an explosion and fire a warehouse bay located at 5329 Georgia Avenue, West Palm Beach, FL, which was directly across the street from a residential community. Officials investigating the explosion found that the force of the blast and the resulting fire caused the roof to lift off of the supporting walls and caused it to nearly collapse. One of the large metal garage doors was blown approximately 75 feet from the warehouse and landed on the top of a nearby house.

8. In conducting a search of the area and the warehouse bay, agents observed thousands of "Mr. Nice Guy" packages that had been blown from the warehouse. Inside the warehouse, agents observed approximately 7 industrial cement mixers and large quantities of the marshmallow leaf. On or about May 31, agents were able to extract a quantity of plant material from the inside of a cement mixer that had blown partially out of the warehouse. The substance was submitted to a DEA lab, and on June 29, 2012, a report was issued, finding that the substances included UR 144 and 5-fluoro-UR-144 (which, as previously stated, have been identified as analogues of JWH-018).

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 13/14/12

By: _____
ROGER H. STEFIN
ASSISTANT UNITED STATES ATTORNEY

Date: 12/14/12

_____
PETER BIRCH
ATTORNEY FOR DEFENDANT

Date: 12/14/12

_____
MICHAEL BRYANT
DEFENDANT

4